# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

HUDSON ASSOCIATES CONSULTING,
INC., et al.,

          *Plaintiffs,*

                                    Case No. 06-2461-EFM

vs.

ERIC WEIDNER, et al.,

          *Defendants.*

## MEMORANDUM AND ORDER

"Knowledge is a process of piling up facts; wisdom lies in their simplification."[1]  This case involves several parties engaged in the knowledge management field, a field that creates and uses data and information to manage knowledge. The proceedings so far have been highly contentious, and the parties have compiled numerous facts but have not simplified the process.

Before the Court in Case No. 06-2461 is the Weidner parties' Motion for Judgment on the Pleadings (Doc. 61) and their Motion for Partial Summary Judgment (Doc.63).[2] All motions have been fully briefed.

---

[1]Martin H. Fischer, *Encore: A Continuing Anthology,* "Fischerisms" p. 309 (Dent Smith ed., 1945); *also available at* http://km.nasa.gov/whatis/KM_Quotes.html.

[2]There are five other pending motions (Docs. 59, 66, 67, 68, and 69) involving several different parties. Those motions will be addressed in a separate order.

As described in detail below, the Court grants the Weidner parties' Motion for Judgment on the Pleadings and grants in part and denies in part the Weidner parties' Motion for Partial Summary Judgment.

## I. General Background and Applicable Procedural Rules[3]

There are three cases that are related. These include *Triple-I v. Hudson Associates Consulting, Inc. et al.*, No. 06-cv-2195-EFM-KMH (the "Triple-I Case");[4] *KM Mentor, LLC et al. v. Knowledge Management Professional Society, Inc. et al.*, No. 06-cv-2381-EFM-KMH (the "KM Mentor Case");[5] and *Hudson Associates Consulting, Inc. et al. v. Eric Weidner, et al.*, No. 06-cv-

---

[3]The majority of this opinion directly mirrors the Memorandum and Opinion issued in Case No. 06-2381.

[4]In Case No. 06-2195, the plaintiff is Triple-I. The defendants and counter-plaintiffs are Hudson Associates Consulting, Inc. and Knowledge Management Professional Society. The remaining Triple-I claims are: (1) cancellation of trademark under K.S.A. § 81-210; (2) tortious interference with business advantage; (3) cancellation of the mark "Certified Knowledge Leader (CKL)" under the Lanham Act; and (4) cancellation of the mark "CKM Instructor (CKMI)" under the Lanham Act. Two claims, fraudulent representation under K.S.A. § 81-212 and cancellation of the Kansas and Virginia marks under the Lanham Act, were previously dismissed.

The KMPro parties' counterclaims are: (1) trademark infringement under 15 U.S.C. § 1114; (2) unfair competition under 15 U.S.C. § 1125; (3) state trademark acts; (4) common law unfair competition; (5) tortious interference with business expectancies; (6) contributory trademark infringement; and (7) civil conspiracy to tortiously interfere, infringe marks, and unfairly compete.

[5]In Case No. 06-2381, the plaintiffs are KM Mentor and Douglas Weidner ("KM Mentor"). The defendants and counter-plaintiffs are Hudson Associates Consulting, Inc., Knowledge Management Professional Society, Dan Kirsch, John Leitch, and Wayne Hulehan ("the KMPro parties"). None of the parties in Case No. 06-2381 reside in Kansas.

KM Mentor's remaining claims are: (1) copyright infringement; (2) contributory copyright infringement; (3) infringement of trademark acts; (4) cybersquatting; (5) fraud; (6) conversion; (7) unfair competition; (8) false advertising under Virginia law; (9) breach of contract; (10) unjust enrichment; (11) misappropriation of trade secrets; and (12) conspiracy to injure trade or business. KM Mentor's defamation claim was previously dismissed.

The KMPro parties' counterclaims are: (1) trademark infringement under 15 U.S.C. § 1114; (2) unfair competition under 15 U.S.C. § 1125; (3) revised Kansas Trademark Act; (4) common law unfair competition; (5) tortious interference with business expectancies; (6) contributory trademark infringement; (7) cybersquatting; (8) breach of contract; (9) Virginia Computer Crimes Act violations; (10) civil conspiracy to tortiously interfere, infringe marks, and unfairly compete; (11) declaration of copyright and common law trademark unenforceability; (12) conversion; and (13) fraud.

2461-EFM-KMH (the "Hudson Case").[6] With respect to the parties, the Court will generally refer to Knowledge Management Professional Society ("KMPro"), Hudson Associates Consulting, Inc. ("Hudson"), Dan Kirsch, John Leitch and Wayne Hulehan as the KMPro parties. KM Mentor, LLC and Douglas Weidner will be collectively referred to as KM Mentor. International Knowledge Management Institute, LLC ("IKMI"), Eric Weidner, Brandon Weidner, and Wendy Johnson Weidner will be collectively referred to as the Weidner parties. Generally, KM Mentor and the Weidner parties are aligned.

The first case, Case No. 06-2195, was filed in the District of Kansas. The second case was filed in the Eastern District of Virginia but was later transferred to the District of Kansas on September 12, 2006. The third case was filed in the District of Kansas on October 24, 2006. These three cases are consolidated for purposes of discovery because they all involve similar claims and counterclaims regarding certain service marks. The order consolidating the three cases states that pleadings related to dispositive motions should be filed in the specific case.

The Court is now considering numerous dispositive motions. In Case No. 06-2195, there are four pending motions for partial summary judgment. In Case No. 06-2381, there is one pending motion for judgment on the pleadings, three pending motions for partial summary judgment, and a

---

[6]In Case No. 06-2461, the plaintiffs are Hudson Associates Consulting, Inc., Knowledge Management Professional Society, and Dan Kirsch ("the KMPro parties"). The defendants are Eric Weidner, Wendy Weidner, Brandon Weidner, International Knowledge Management Institute (IKMI), Ronald Dysvick, Robert Spachman, and Knowledge Central Corporation. None of the parties in Case No. 06-2461 reside in Kansas.

The KMPro parties' claims are: (1) trademark infringement under 15 U.S.C. § 1114 (against all named defendants); (2) unfair competition under 15 U.S.C. § 1125 (against all named defendants); (3) revised Kansas Trademark Act (against all named defendants); (4) common law unfair competition (against all named defendants); (5) tortious interference with business expectancies (against all named defendants); (6) contributory trademark infringement (against all named defendants); (7) cybersquatting (against IKMI and Weidners); (8) Virginia Computer Crimes Act violations (against IKMI and Weidners); (9) defamation (against Knowledge Central and Dysvick); (10) civil conspiracy to tortiously interfere, infringe marks, and unfairly compete (against all named defendants); and (11) declaration of copyright and common law trademark unenforceability (against IKMI and Weidners).

motion to strike an affidavit attached to a summary judgment motion. In all, there are five motions pending in Case No. 06-2381. In Case No. 06-2461, there are seven pending motions for partial summary judgment or motion for judgment on pleadings. In total, the Court is considering sixteen motions related to these three cases.

The required rules for summary judgment motions in the District of Kansas are set forth in D. Kan. Rule 56.1. Under that rule, "[a]ll material facts set forth in the statement of the movant shall be deemed admitted for the purpose of summary judgment unless specifically controverted by the statement of the opposing party."[7] D. Kan. Rule 56.1(b) addresses opposing motions for summary judgment. It states:

> **(b) Opposing Memorandum**
> (1) A memorandum in opposition to a motion for summary judgment shall begin with a section that contains a concise statement of material facts as to which the party contends a genuine issue exists. Each fact in dispute shall be numbered by paragraph, shall refer with particularity to those portions of the record upon which the opposing party relies, and, if applicable, shall state the number of movant's fact that is disputed.
> (2) If the party opposing summary judgment relies on any facts not contained in movant's memorandum, that party shall set forth each additional fact in a separately numbered paragraph, supported by references to the record, in the manner required by subsection (a), above. All material facts set forth in this statement of the non-moving party shall be deemed admitted for the purpose of summary judgment unless specifically controverted by the reply of the moving party.

---

[7]D. Kan. Rule 56.1(a).

There are numerous issues with the KMPro parties' responses in these three cases.[8] As noted above, the District of Kansas has specific rules regarding motions for summary judgment. Facts not properly controverted are deemed admitted. The KMPro parties generally do not direct the Court to the portion of the record upon which they rely upon to oppose the facts as set forth by the Weidner parties.

"[I]t is the duty of the parties contesting a motion for summary judgment to direct the court to those places in the record where evidence exists to support their positions."[9] The Court will not sift through the record in an attempt to find a genuine issue of material fact or locate arguments for the parties.[10] It is the party's responsibility to tie the facts to its legal contention.[11] "Without a

---

[8]One example is as follows: In Case No. 06-2381, KM Mentor filed their motion for partial summary judgment (Doc. 90). In response, the KMPro parties filed a two-page opposing memorandum stating that the facts in KM Mentor's memorandum do not differ materially from those facts set forth in Doc. 64 in Case No. 06-2461 and that the denials of those facts in their response to Doc. 64 are "equally relevant." Notably, the KMPro parties do not direct the Court to their specific document. In addition, the KMPro parties assert that they "further incorporate by this reference their factual response, arguments and authorities set forth in opposition to the very similar memoranda in support of Triple-I's two motions for partial summary judgment on behalf of Triple-I, Doc. 409/412, and on behalf of Spachman, Dysvick and Knowledge Central Corporation, Doc. 410/415." The KMPro parties state that their factual responses to these memorandums are "equally pertinent," but again, they do not direct the Court to their specific documents.

In Case No. 06-2461, the Court can determine that the responsive document is Doc. 83. In Doc. 83, the KMPro parties frequently deny facts but fail to cite to the record or provide evidence to the Court for support of their denial. Responding to a fact by stating "denied, objection" and then making generalized and/or specific statements with no citation to any evidence for support of the denial does not appropriately controvert a fact for summary judgment. For example, fact number 73 is "denied," and there is an almost two full-page listing of certain documents that appear to reference Bates stamped documents. Yet, the KMPro parties do not list these documents as exhibits to this responsive document or inform the Court that these documents are provided as exhibits. Indeed, no exhibits were attached or filed with Doc. 83 in Case No. 06-2461. It does not appear that the briefs filed with the Court were even proofread. As such, the KMPro parties do not appropriately controvert most facts that they contend are in dispute.

[9]*Boldridge v. Tyson Foods, Inc.,* 2007 WL 1299197, at *2 (D. Kan. May 2, 2007) (citing *Caffree v. Lundahl,* 143 Fed. Appx. 102, 106 (10th Cir. 2005) and *SIL-FLO, Inc. v. SFHC, Inc.,* 917 F.2d 1507, 1513-14 (10th Cir. 1990) (stating that not only will the court not sift through the record to find support for an argument, the court will not manufacture arguments for the party)).

[10]*Boldridge,* 2007 WL 1299197, at *2; *see also Cross v. The Home Depot,* 390 F.3d 1283, 1291 (10th Cir. 2004).

[11]*Boldridge,* 2007 WL 1299197, at *2 (citation omitted).

specific reference, 'we will not search the record in an effort to determine whether there exists dormant evidence which might require submission of the case to a jury.'"[12]

The parties' attempt to incorporate by reference numerous documents filed in separate cases and dealing with separate issues is improper. While the Court is aware that the claims in these three cases are all very similar, the responsibility is on the parties to demonstrate how they overlap or differ. It also is the parties' responsibility to present their arguments and authorities in an understandable fashion. The record in these three cases is voluminous, and the Court will not search for the KMPro parties' evidence. The Court will deem as admitted all facts not specifically controverted with a record cite. To the extent that the record does not support the Weidner parties' factual contentions, the Court will disregard those facts. If the Court could easily ascertain to which document the KMPro parties directed the Court, the Court will consider that document.

## II. The Weidner Parties' Motion for Judgment on the Pleadings in Case No. 06-2461 (Doc. 61)

### A. Standard of Review

Responsive pleadings have already been filed, and this motion is brought pursuant to Fed. R. Civ. P. 12(c) rather than Fed. R. Civ. P. 12(b)(6). This is a distinction without a difference as the standard is the same under Rule 12(c) and Rule (12)(b)(6).[13] To survive a motion to dismiss for failure to state a claim upon which relief can be granted, a complaint must present factual allegations, assumed to be true, that "raise a right to relief above the speculative level," and must

---

[12]*Gross v. Burggraf Const. Co.*, 53 F.3d 1531, 1546 (10th Cir. 1995) (citations omitted). *See also United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991) ("Judges are not like pigs, hunting for truffles buried in briefs.").

[13]*Ward v. Utah*, 321 F.3d 1263, 1266 (10th Cir. 2003); *see also Cappetta v. GC Services Ltd. P'ship*, 654 F. Supp. 2d 453, 456 (E.D. Va. 2009) (citing *Burbach Broad. Co. v. Elkins Radio Corp.*, 278 F.3d 401, 405-06 (4th Cir. 2002); *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999)).

contain "enough facts to state a claim to relief that is plausible on its face."[14]  Under this standard,

"the mere metaphysical possibility that some plaintiff could prove some set of facts in support of

the pleaded claims is insufficient; the complaint must give the court reason to believe that this

plaintiff has a reasonable likelihood of mustering factual support for these claims."[15] The allegations

must be enough that, if assumed to be true, the plaintiff plausibly, not merely speculatively, has a

claim for relief.[16]

**B.  Analysis**

*1. Count XI - Declaration of Copyright and Common Law Trademark Unenforceability*

The KMPro parties' eleventh claim is entitled "Declaration of Copyright and Common Law

Trademark Unenforceability."  They incorporate by reference the preceding 122 paragraphs of their

Complaint and state that the "the conduct of IKMI and the Weidners, as alleged constitutes

inequitable conduct such as to require a declaration by this Court that any copyright or unregistered

trademark obtained by them relating to knowledge management is invalid and unenforceable." The

Weidner parties assert that the KMPro parties have asserted a claim of inequitable conduct and failed

to allege it with particularity.

Inequitable conduct is usually seen as an affirmative defense in patent litigation in which the

defendant alleges that plaintiff's patent is invalid because plaintiff engaged in fraudulent conduct

before the United States Patent and Trademark Board ("USPTO"). "[A]lthough patent misuse is an

affirmative defense, it may also form the basis for a declaratory judgment counterclaim of

---

[14]*Bell Atl. Corp v. Twombly*, 550 U.S. 544, 555 (2007).

[15]*Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007).

[16]*Robbins v. Oklahoma*, 519 F.3d 1242, 1247-48 (10th Cir. 2008).

unenforceability."[17]

In this case, there are no patent claims. There are, however, trademark and copyright claims. Neither party addresses the distinction between a patent, trademark, or copyright claim or whether inequitable conduct is even applicable to a trademark or copyright claim. While the majority of the cases the Weidner parties cite to are cases relating to the affirmative defense of inequitable conduct with regard to patent infringement, the Weidner parties have cited to one case referencing inequitable conduct and trademark unenforceability.[18] They have cited to no cases referencing inequitable conduct and copyright unenforceability. Both parties have briefed the issue as if the patent inequitable conduct analysis is equally applicable to trademark and copyright claims. Accordingly, the Court will address whether the KMPro parties have adequately pled an inequitable conduct claim relying on the parties' briefing.

"Inequitable conduct includes affirmative misrepresentation of a material fact, failure to disclose material information, or submission of false material information, coupled with an intent to deceive."[19] Federal Rules of Civil Procedure 9(b) requires that "a party must state with particularity the circumstances constituting fraud or mistake." Although on its face Fed. R. Civ. P. 9(b) only concerns "fraud or mistake" allegations, several courts, including the District of Kansas and the Eastern District of Virginia, have considered this rule and concluded that inequitable

---

[17]*Adams Respiratory Therapeutics, Inc. v. Perrigo Co.*, 255 F.R.D. 443, 447 (W.D. Mich. 2009); *see also Thermal Solutions, Inc. v. Imura Int'l U.S.A., Inc.*, 2008 WL 4499967, at *1 (D. Kan. Oct. 2, 2008).

[18]That case is *Cynergy Ergonomics, Inc. v. Ergonomic Partners, Inc.*, 2008 WL 2817106, at *5 (E.D. Mich. July 21, 2008).

[19]*Applied Interact, LLC v. Continental Airlines, Inc.*, 2008 WL 177740, at *6 (E.D. Va. Jan. 17, 2008) (citing *Molins PLC v. Textron, Inc.*, 48 F.3d 1172, 1178 (Fed. Cir. 1995)).

conduct must be pled with particularity.[20] Under Rule 9(b), a party must plead with particularity the time, place and contents of the false representation, the identity of the person making the false statements, and the consequences thereof.[21]

The Weidner parties contend that the KMPro parties have failed to state a claim because they have not alleged with particularity the elements of inequitable conduct. They state that the KMPro parties have failed to specify any statements, actions, or acts. In addition, they assert that the KMPro parties did not provide information as to which of the Plaintiffs committed such acts or when and where such acts occurred.

The KMPro parties assert that their claim of inequitable conduct incorporates by reference all of the detailed factual allegations and causes of action in the preceding 122 paragraphs, and "[i]t is simply not true that they fail to specify any statements or actions of the Plaintiffs that could give rise to declaratory relief based on inequitable conduct." However, they fail to direct the Court to any of the previous 122 paragraphs that are relevant and specific to their claim and instead ask the Court to consider seven other documents contained in three separate cases as sufficient pleading and proof of inequitable conduct in this case.

In looking at the pleading that is at issue - the Complaint - the Court finds that the KMPro parties have failed to plead inequitable conduct with particularity. The KMPro parties do not satisfy the specific pleading requirements. While the parties are generally identified, there are no specific allegations as to which party performed any acts.

---

[20]*Thermal Solutions*, 2008 WL 4499967, at *2 (citing *Applied Interact*, 2008 WL 177740, at *3-6 (compiling cases).

[21]*See Koch v. Koch Indus. Inc.*, 203 F.3d 1202, 1236 (10th Cir. 2000); *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 784 (4th Cir. 1999).

With regard to allegations of the place of the inequitable conduct, as noted above, a party alleging inequitable conduct generally alleges that inequitable conduct occurred before the USPTO when the party obtained the patent, and the party seeks the unenforceability of that patent. Here, the KMPRo parties are seeking unenforceability of trademarks that are *not* registered with the USPTO. Indeed, the allegations state that defendants have tried to register a number of knowledge management-related trademarks with the USPTO but have abandoned most applications after initial negative action. There are no specifics as to what trademarks defendants "tried to register" or when these attempts were made. As such, there does not appear to be allegations of inequitable conduct before the USPTO.

The KMPRo parties are also seeking unenforceability of copyrights. The Complaint merely states that defendants have applied for copyrights for materials that violate and infringe Hudson's and KMPro's marks. There is no further information or allegations relating to these copyrights. Accordingly, the Complaint is lacking in specifics as to the place of the inequitable conduct.

In addition, the Court finds that the Complaint is lacking in detail and particularity as to the time and content of the inequitable conduct. The KMPro parties have failed to state when defendants made affirmative misrepresentations of material fact, failed to disclose material information, or submitted false information with the intent to deceive. The allegations in the Complaint are not specific as to what or to whom affirmative misrepresentations were made. There is no particularity as to the misrepresentation of the services. The Complaint also lacks specificity as to when the defendants misrepresented material facts. Here, the Complaint is lacking in detail as to the specifics of the place, time, content of the alleged misrepresentations or omissions, and consequences of the misrepresentations. As such, the Court grants the Weidner parties' motion for judgment on the

pleadings as to Count XI (Doc. 87).

## IV. The Weidner Parties' Motion for Summary Judgment in Case No. 06-2461 (Doc. 63)

### A. Legal Standard

Summary judgment is appropriate if the moving party demonstrates that "there is no genuine issue as to any material fact" and that it is "entitled to judgment as a matter of law."[22] "An issue of fact is 'genuine' if the evidence allows a reasonable jury to resolve the issue either way."[23] A fact is "material" when "it is essential to the proper disposition of the claim."[24] The court must view the evidence and all reasonable inferences in the light most favorable to the nonmoving party.[25]

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact.[26] In attempting to meet this standard, the moving party need not disprove the nonmoving party's claim; rather, the movant must simply point out the lack of evidence on an essential element of the nonmoving party's claim.[27]

If the moving party carries its initial burden, the party opposing summary judgment cannot rest on the pleadings but must bring forth "specific facts showing a genuine issue for trial."[28] The opposing party must "set forth specific facts that would be admissible in evidence in the event of

---

[22]Fed. R. Civ. P. 56(c).

[23]*Haynes v. Level 3 Communications*, LLC, 456 F.3d 1215, 1219 (10th Cir. 2006).

[24]*Id.*

[25]*LifeWise Master Funding v. Telebank*, 374 F.3d 917, 927 (10th Cir. 2004).

[26]*Thom v. Bristol-Myers Squibb Co.*, 353 F.3d 848, 851 (10th Cir. 2003)(citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)).

[27]*Id.* (citing *Celotex*, 477 U.S. at 325.)

[28]*Garrison v. Gambro, Inc.*, 428 F.3d 933, 935 (10th Cir. 2005).

trial from which a rational trier of fact could find for the nonmovant."[29]  Conclusory allegations alone cannot defeat a properly supported motion for summary judgment.[30]  The nonmovant's "evidence, including testimony, must be based on more than mere speculation, conjecture, or surmise."[31]  The Court is also cognizant that it may not make credibility determinations or weigh the evidence when examining the underlying facts of the case.[32]

### B. Uncontroverted Facts[33]

Preliminarily, the Court will address the trademarks at issue.  In their statement of uncontroverted facts, the Weidner parties set forth approximately twenty-one registered and unregistered trademarks that they believe are at issue.  For support, they rely on a statement of infringements filed by the KMPro parties on September 26, 2008.

On September 18, 2008, in a Status Conference Order, Magistrate Judge O'Hara required the KMPro parties, as well as KM Mentor, to file a detailed statement about the marks at issue with respect to each count.[34]  KM Mentor and the KMPro parties filed their statements on September 26,

---

[29]*Mitchell v. City of Moore, Okla.*, 218 F.3d 1190, 1197 (10th Cir. 2000)(citing *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998).

[30]*White v. York Int'l Corp.*, 45 F.3d 357, 363 (10th Cir. 1995).

[31]*Bones v. Honeywell Intern, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004).

[32]*Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986).

[33]The same facts will be set forth in this case and in Case No. 06-2381 with minor additions to the facts in Case No. 06-2461.

[34]Doc. 301 in Case No. 06-2195.  At that time, Judge O'Hara was the magistrate judge assigned, but the case was subsequently transferred to Magistrate Judge Humphreys. Doc. 348. Specifically, Judge O'Hara required the parties to "file a detailed statement with the following information with respect to each count: a. A complete and precise description of the marks at issue. b. Which adverse party (or parties) allegedly used each mark, and exactly how and on what dates(s) that occurred. c. If a word or phrase contained within the mark, or an abbreviation or acronym is associated with the mark, and allegedly was used in a manner likely to cause confusion, how and on what date(s) that occurred." Doc. 301, p. 4. Judge O'Hara required this "[i]n order to facilitate evaluation of the trademark and copyright infringement claims which the court believes will drive the ultimate settlement or adjudication of these cases." *Id.*

2008.[35] The KMPro parties' statement of infringements include approximately six registered federal marks, thirty-five registered state marks, and thirteen unregistered, common law marks.

Approximately nine months later, on June 15, 2009, the KMPro parties filed a motion to amend their complaint and counterclaims in each of the three consolidated cases.[36] They sought to add approximately forty-five additional marks. Although the KMPro parties only specifically referenced five marks in their motion, they also stated that they wanted to add all the marks stated in their Statement of Infringements filed on September 26, 2008.

The consolidated cases were all filed in 2006, discovery deadlines had passed, and the dispositive motion deadline for all three cases was set for June 19, 2009.    On August 14, 2009, the Court denied their motion for leave to amend the complaint noting that the KMPro parties' motion to amend was untimely.[37]  The Court found that "the respective positions and strategies in the consolidated cases have been highly contentious, requiring numerous conferences, hearings, and rulings," and allowing the amendments "would require a new round of discovery and the refiling of numerous dispositive motions." The Court noted that discovery was closed and the dispositive motion deadline had passed.  Accordingly, it did not allow the KMPro parties to amend their complaint to add additional marks.

Generally, if a pretrial order has been entered, it governs the parties' claims.[38]  Here, there is no pretrial order.  Because there is no pretrial order and because the KMPro parties' motion to

_____

[35]Docs. 305, 307 in Case No. 06-2195.

[36]Doc. 407 in Case No. 06-2195. This was four days before the dispositive motion deadline of June 19, 2009.

[37]Doc. 445 in Case No. 06-2195.

[38]*Wilson v. Muckala*, 303 F.3d 1207, 1215 (10th. Cir. 2002).

-13-

amend to add additional trademarks was denied, the Court will only address the trademarks included in the current complaints and counterclaims.

The KMPro parties' current counterclaim in Case No. 06-2381 is Doc. 14, and their current complaint, the Second Amended Complaint, in Case No. 06-2461 is Doc. 49.[39]  The trademarks included in this counterclaim and complaint are: (1) "CKM Instructor (CKMI)" - a federally registered mark and registered in Virginia; (2) "Certified Knowledge Leader (CKL)" - a federally registered mark; (3) "Certified Knowledge Manager (CKM)" - a mark registered in Kansas and Virginia; and (4) "Knowledge Management Certification Board (KMCB)" - a federally registered mark and a mark registered in Maryland and Virginia.[40]  The marks are used in conjunction with providing knowledge management certification and training.

"Knowledge management" describes "the technologies involved in creating, disseminating and utilizing knowledge data." "KM" is a commonly used abbreviation for "knowledge management." All of the parties are involved in the knowledge management field. KM Mentor, Douglas Weidner, Hudson Associates Consulting, Inc., and Dan Kirsch provide knowledge management training.

A "knowledge manager" is generally a job title or role for a person working in the knowledge management field.  A knowledge manager may be "responsible for coordinating the

---

[39]The KMPro parties' current counterclaim in Case No. 06-2195 is Doc. 68.

[40]Two of the federally registered marks are registered to Hudson, while the third one is registered to Knowledge Management Professional Society.
    All four of these marks are included in each complaint in the three cases but there are slight differences with respect to registrations in Virginia and Maryland.  The KMPro parties sometimes include the fact that a mark is registered in Virginia and Maryland and sometimes does not include this fact. This does not appear to make a difference as there appears to only be a state law trademark infringement claim with respect to Kansas.
    In addition, neither side is consistent in how they refer to these alleged trademarks. For example, the Court has seen "CKM Instructor (CKMI)" and "CKM INSTRUCTOR (CKMI)."

activities of other roles such as knowledge engineer and knowledge analyst." The term "knowledge manager" has been in use since at least 1995.

John Leitch, KMPro's President, Dan Kirsch, Hudson's President, and Wayne Hulehan, KMPro's Treasurer, all state that knowledge managers are persons working in the knowledge management field and are involved in an organizations' knowledge management efforts. Certified knowledge manager is a term for a "knowledge manager" who has been "certified," and the dictionary definition for "certified" indicates "one to whom a certificate or license has been issued." "CKM" is a commonly used acronym which may refer to "certified knowledge manager" or "certified knowledge management."

"CKMI" is an acronym which refers to "Certified Knowledge Manager Instructor." "Certified Knowledge Leader" is a phrase that refers to one who is certified as a knowledge leader. "CKL" is an acronym that stands for "Certified Knowledge Leader."

Douglas Weidner helped found KMCI, a knowledge management professional society, in 1998. He helped launch the first knowledge management training, called the "Certified Knowledge Manager (CKM) Program," in early 1999 for KMCI, and he was one of the program's first-time CKM instructors.

From 1999 to 2001, on behalf of KMCI, Douglas Weidner provided KM training to individuals in association with the term "Certified Knowledge Manager (CKM)," "Certified Knowledge Manger," and "CKM." In early 2000, Douglas Weidner co-founded the Knowledge Management Certification Committee which held initial board meetings in February 2000. Subsequently, the other founder, Edward Swanstrom, moved to Tucson and incorporated it as Knowledge Management Certification Board Inc. (KMCB), affiliated with eKnowledgeCenter

(eKC), Inc.

In mid-2001, Douglas Weidner co-founded the Knowledge Management Professional Society (KMPro). The KMPro founders were Brandon Weidner, Eric Weidner, John Leitch, and one other individual. Douglas Weidner directed the KMPro Learning Center, and Leitch was President of KMPro. KMPro was to be a professional society with a focus on the CKM Program.

From 2001 to 2004, through KM Mentor and on behalf of KMPro, Douglas Weidner provided KM training to individuals in association with the terms "Certified Knowledge Manager (CKM)," "Certified Knowledge Manager," and "CKM." Since 2001, Weidner has provided KM training and certification to more than 2,200 students from over forty countries. Since 2004, through the International Knowledge Management Institute, LLC ("IKMI"), Weidner has provided KM training in association with the terms "Certified Knowledge Manager (CKM)," "Certified Knowledge Manager," and "CKM." From 1999 through the present, there have been several organizations offering knowledge management training called "Certified Knowledge Manager (CKM)" training or a close variation thereof.

Hudson is the registrant of a federally registered mark, "CKM Instructor (CKMI)." This mark was registered with the USPTO on December 27, 2005. In registering "CKM Instructor (CKMI)," the USPTO stated that Hudson "must disclaim the descriptive wording 'CKM INSTRUCTOR' apart from the mark as shown because it merely describes the feature of the identified services."[41]

---

[41]The Weidner parties provide USPTO documents and state that they obtained these documents from the USPTO website. The KMPro parties do not dispute the authenticity of these documents as they do not appropriately respond to the facts, and they do not provide any additional USPTO documents to the Court with their response with one exception.

In the KMPro parties' response to the motion for summary judgment filed in Case No. 06-2461, they direct the Court to their USPTO application/registration for the mark "CKM" located at Doc. 424 in Case No. 06-2195. In

The first use of the phrase "CKM Instructor (CKMI)," or any variation thereof, for business purposes was by Douglas Weidner in 2000.[42]

Hudson is also the registrant of the federally registered mark, "Certified Knowledge Leader (CKL)." This mark was registered with the USPTO on March 21, 2006.[43]

KMPro is the registrant of the federally registered mark, "Knowledge Management Certification Board (KMCB)." This mark was registered on April 11, 2006. In registering "Knowledge Management Certification Board (KMCB)," the USPTO stated that KMPro "must disclaim the descriptive wording 'KNOWLEDGE MANAGEMENT CERTIFICATION BOARD' apart from the mark as shown because it merely describes the nature and type of services offered."[44]

The first use of the phrase Knowledge Management Certification Board was by Edward Swanstrom in 2000 as a successor to the "Knowledge Management Certification Committee."

No federal registration has been issued, but a Kansas and Virginia registration has been issued for the mark "Certified Knowledge Manager (CKM)."[45] All of the trademarks are used in

---

addition, they also include an excerpt of the CKM application as one of their responsive facts in Case No. 06-2461. CKM is not in the Complaint or Counterclaim.

[42]While Douglas Weidner states in his affidavit that he used the term from 2000 through 2005 and that KM Mentor and Weidner no longer use the term, KM Mentor filed its complaint against the KMPro parties in 2006. In KM Mentor's complaint filed in Case No. 06-2381, KM Mentor contends that it owns common law trademarks, including CKMInstructor (CKMI). The Court, therefore, cannot conclude that Weidner stopped using the mark in 2005 as undisputed.

[43]Although the Weidner parties reference USPTO documents regarding "Certified Knowledge Leader (CKL)," only one page of that exhibit relates to the mark "Certified Knowledge Leader (CKL)," and the rest of the cited exhibit relates to Knowledge Management Certification Board Etc. Accordingly, although the Weidner parties state that the USPTO required the applicant to disclaim the descriptive wording CERTIFIED KNOWLEDGE LEADER apart from the mark because it merely describes services, the Court cannot verify this fact.

[44]The USPTO documents are not entirely clear as the document describes the mark as "Knowledge Management Certification Board Etc." and as "Knowledge Management Certification Board (KMCB)."

[45]Neither the Weidner parties or the KMPro parties set forth facts with respect to the Kansas registration of "Certified Knowledge Manager (CKM)." In their Complaint, the KMPro parties state that they filed their application for registration of this mark in Kansas on February 9, 2006 and that it was registered on February 13,

conjunction with providing knowledge management certification and training.

Douglas Weidner filed a trademark application for "CERTIFIED KNOWLEDGE MANAGER (CKM)" on June 30, 2004. He abandoned the application about a year later, after the USPTO advised him that "CERTIFIED KNOWLEDGE MANAGER (CKM)" is merely descriptive of the subject matter of the applicant's service . . . [and] CKM is a commonly recognized acronym for CERTIFIED KNOWLEDGE MANAGER."

Neither Douglas Weidner, Eric Weidner, Brandon Weidner, Wendy Johnson Weidner, IKMI, nor KM Mentor were aware of any business relationship between KMPro or Hudson and the U.S. Army or Cubic Defense Applications, Inc. before KMPro filed its lawsuit.[46]

Wendy Johnson Weidner owns 10% of KM Mentor and has provided administrative assistance to KM Mentor and IKMI. KM Mentor and IKMI have maintained bank accounts separate from any of the other Defendants, and Wendy Weidner has never had control over either KM Mentor or IKMI.

**C. Analysis**

The Weidner parties seek summary judgment as to Counts I, II, III, IV, V, VI, VII, and X. The Court will address each claim.

*1. Count I (Trademark Infringement under 15 U.S.C. § 1114) - Federally Registered Marks of CKM Instructor (CKMI), Certified Knowledge Leader (CKL), and Knowledge Management Certification Board (KMCB)*

---

2006.

[46]As noted above, the Court has set forth facts applicable to both Case No. 06-2381 and Case No. 06-2461. Douglas Weidner and KM Mentor are the parties in Case No. 06-2381 while Eric Weidner, Brandon Weidner, Wendy Johnson Weidner, and IKMI are the parties in Case No. 06-2461.

"A trademark is a distinctive mark, symbol, or emblem used by a producer or manufacturer to identify and distinguish his goods from those of others."[47] "To be protectable, 'a mark must be capable of distinguishing the products [or services] it marks from those of others.'"[48] To determine the degree of protection, there are five ascending categories: generic, descriptive, suggestive, arbitrary, and fanciful.[49]

> A mark is generic if it is a common description of products [or services] and refers to the genus of which the particular product [or service] is a species. A mark is descriptive if it describes the product's [or service's] features, qualities, or ingredients in ordinary language or describes the use to which the product [or service] is put. A mark is suggestive if it merely suggests the features of the product [or service], requiring the purchaser to use imagination, thought, and perception to reach a conclusion as to the nature of the goods [or services]. An arbitrary mark applies a common word in an unfamiliar way. A fanciful mark is not a real word at all, but is invented for its use as a mark.[50]

If a term is generic, it is not eligible for protection because "the public has an inherent right to call a product or service by its generic name."[51] Suggestive, arbitrary and fanciful terms are entitled to the most protection.[52] Certain descriptive terms fall in the middle.

Trademark protection is only available to marks that are distinctive.[53] "A mark that is merely descriptive of the characteristics, qualities, use or functions of the goods cannot be registered."[54] "A

---

[47]*Educ. Dev. Corp. v. Economy Co.*, 562 F.2d 26, 28 (10th Cir. 1977).

[48]*Donchez v. Coors Brewing Co.*, 392 F.3d 1211, 1216 (10th Cir. 2004) (citing *Lane Capital Mgmt., Inc. v. Lane Capital Mgmt., Inc.*, 192 F.3d 337, 344 (2d Cir. 1999)).

[49]*Id.*

[50]*Id.*

[51]*Id.* (citing *U.S. Search, LLC v. U.S. Search.com, Inc.*, 300 F.3d 517, 523 (4th Cir. 2002)).

[52]*Id.*

[53]*Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 769 (1992).

[54]*Educational Development*, 562 F.2d at 28.

descriptive mark may be eligible for protection, but only if it has acquired a 'secondary meaning' in the minds of the public."[55] "Saying that a trademark has acquired 'secondary meaning' is shorthand for saying that a descriptive mark has become sufficiently distinctive to establish 'a mental association in buyers' minds between the alleged mark and a single source of the product.'"[56] "The categorization of a mark is a factual question."[57]

To establish a trademark infringement claim, a plaintiff must prove that: (1) the mark is valid and protectable; (2) defendant used the mark in commerce without consent; and (3) defendant's use of the mark is likely to cause confusion.[58] Under the Lanham Act,

> [a] certificate of registration of a mark upon the principal register provided by this chapter shall be prima facie evidence of the validity of the registered mark and of the registration of the mark, of the owner's ownership of the mark, and of the owner's exclusive right to use the registered mark in commerce on or in connection with the goods or services specified in the certificate, subject to any conditions or limitations stated in the certificate.[59]

The USPTO will not register a mark that is generic so "the fact that a mark is registered is strong evidence that the mark satisfies the statutory requirements for the distinctiveness necessary for trademark protection."[60]

---

[55]*Donchez*, 392 F.3d at 1216 (citing *U.S. Search*, 300 F.3d at 523).

[56]*Retail Services Inc. v. Freebies Publ'g*, 364 F.3d 535, 539 (4th Cir. 2004) (citing 2 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 15.5 (4th ed. 2003)).

[57]*Donchez*, 392 F.3d at 1216 (affirming district court's grant of summary judgment on the basis of undisputed facts).

[58]*Utah Lighthouse Ministry v. Found. for Apologetic Info. & Research*, 527 F.3d 1045, 1050 (10th Cir. 2008); *Universal Money Ctrs., Inc. v. AT & T Co.*, 22 F.3d 1527, 1529 (10th Cir. 1994).

[59]15 U.S.C. § 1057(b).

[60]*Retail Services,* 364 F.3d at 542 (citing 15 U.S.C. §§ 1052(e), 1057(b); 15 U.S.C. § 1064(3)).

A registered mark creates a rebuttable presumption that the trademark is valid.[61] The way in which the trademark is registered with the USPTO may determine what type of presumption the registrant is entitled. If the USPTO "registers a mark without first requiring the applicant to prove secondary meaning, the holder of the mark is entitled to a presumption that its registered trademark is inherently distinctive, as opposed to merely descriptive."[62] The alleged infringer "may defend a suit on the ground that the mark does not merit protection because it is not inherently distinctive (i.e., not suggestive, arbitrary, or fanciful) but, rather, is merely descriptive of the product."[63]

If the USPTO required the registrant to provide proof of secondary meaning and registered the mark under Section 2(f),[64] the registrant of the mark is entitled to a presumption that the mark has acquired distinctiveness, rather than inherent distinctiveness.[65] This is also a rebuttable presumption.[66] "In a case involving a registered trademark where acquired distinctiveness (i.e.,

---

[61]*Educational Development*, 562 F.2d at 28.

[62]*Borinquen Biscuit Corp. v. M.V. Trading Cor*p., 443 F.3d 112, 117 (1st Cir. 2006) (citation omitted); *see also Sally Beauty Co., Inc. v. Beautyco, Inc.*, 304 F.3d 964, 976 (10th Cir. 2002).

[63]*Borinquen*, 443 F.3d at 117.

[64]Section 2(f) of the Lanham Act, 15 U.S.C. § 1052(f), allows the registration of "a mark used by the applicant which has become distinctive of the applicant's goods in commerce" upon "proof of substantially exclusive and continuous use thereof as a mark by the applicant in commerce for the five years before the date on which the claim of distinctiveness is made."

[65]*Aromatique, Inc. v. Gold Seal, Inc.*, 28 F.3d 863, 869-70 (8th Cir. 1994); *see also Arrow Fastener Co., Inc. v. Stanley Works*, 59 F.3d 384, 393 (2d Cir. 1995).

[66]*See Leelanau Wine Cellars, Ltd. v. Black & Red, Inc.*, 502 F.3d 504, 514 (6th Cir. 2007) (stating that the "[t]he effect of the statutory presumption contained in § 1115(a) is to shift the burden of proof to the alleged infringer . . . to prove the absence of secondary meaning."); *Aromatique*, 28 F.3d at 873 (finding that alleged infringer "successfully rebutted any presumption of distinctiveness by showing that the evidence submitted to the PTO was inadequate to support a finding of distinctiveness."); *Arrow*, 59 F.3d at 393 (finding that the USPTO's decision to register the mark after registrant submitted evidence of secondary meaning created a rebuttable presumption that mark enjoys secondary meaning.)

secondary meaning) is an issue, the timing of the effectiveness of that presumption is crucial."[67]

In any event, once the mark is registered, there is a presumption of validity that requires the party challenging the trademark to produce sufficient evidence to rebut the presumption. This presumption of validity "has a burden-shifting effect, requiring the party challenging a registered mark to produce sufficient evidence to establish that the mark is generic by a preponderance of the evidence."[68] "If sufficient evidence of genericness is produced to rebut the presumption, the presumption is neutralized and essentially drops from the case, although the evidence giving rise to the presumption remains."[69] Similarly, a party may rebut the presumption of inherent descriptiveness or acquired distinctiveness by producing sufficient evidence that the mark is merely descriptive or that the mark does not have secondary meaning.[70]

If a mark has not been registered with the USPTO, the plaintiff is not entitled to a presumption of validity but instead bears the burden of establishing the validity of the mark.[71]

### a. Generic

The Weidner parties assert that the KMPro parties' marks are generic. A term is generic if it is used to describe the relevant product or service. If a term is generic because it refers to a general class of goods and does not indicate the particular source of an item, it does not receive

---

[67]*Aromatique*, 28 F.3d at 870.

[68]*Retail Services*, 364 F.3d at 542.

[69]*Id.* at 543 (internal quotation and citations omitted).

[70]*See Borinquen*, 443 F.3d at 117-18 (finding that when mark registered without the USPTO requiring registrant to prove secondary meaning, the alleged infringer "must offer significantly probative evidence to show that the mark is merely descriptive."); *see Arrow,* 59 F.3d at 393 (finding that alleged infringer did not direct the court to evidence sufficient to rebut the presumption that the mark enjoyed secondary meaning.)

[71]*See Utah Lighthouse*, 527 F.3d at 1050.

trademark protection.[72]  To determine whether a term is generic, some courts have relied upon the

"Who are you? - What are you? test.[73]  "A mark answers the buyer's questions 'Who are you?'

'Where do you come from?' 'Who vouches for you?' But the name of a product answers the

question 'What are you?'"[74]  Because a term may answer both questions simultaneously, "[t]he

primary significance of the registered mark to the relevant public rather than purchaser motivation

shall be the test for determining whether the registered mark has become the generic name of goods

or services on or in connection with which it has been used."[75]  "The generic name of a product-what

it is-can never serve as a trademark."[76]

     "When the relevant public ceases to identify a trademark with a particular source of a product

or service but instead identifies the mark with a class of products or services regardless of source,

that mark has become generic and is lost as an enforceable trademark."[77]  To rebut the presumption

that a mark is not generic, the alleged infringer "must offer sufficient proof that 'the primary

significance of the mark [is] its indication of the nature or class of the product or service, rather than

an indication of source.'"[78]  In addition, "the evidence must demonstrate the generic understanding

---

[72]*The Golf Warehouse, L.L.C. v. Golfers' Warehouse, Inc.*, 142 F. Supp. 2d 1307, 1309 (D. Kan. 2001).

[73]*Id*. at 1310.

[74]*Official Airline Guides, Inc. v. Goss*, 6 F.3d 1385, 1391 (9th Cir. 1993) (quoting 1 J. McCarthy, *Trademarks and Unfair Competition* § 12.01 (3d ed. 1992)); *see also Golf Warehouse*, 142 F. Supp. 2d at 1310.

[75]15 U.S.C. § 1064(3).

[76]*Official Airlines*, 6 F.3d at 1391.

[77]*Creative Gifts, Inc. v. UFO*, 235 F.3d 540, 544 (10th Cir. 2000) (citing *Glover v. Ampak, Inc.*, 74 F.3d 57, 59 (4th Cir. 1996)).

[78]*Retail Services*, 364 F.3d at 544 (citing *Glover,* 72 F.3d at 59); *see also Creative Gifts*, 235 F.3d at 544.

of the mark from the viewpoint of the relevant public."[79]

"Evidence offered to rebut the presumption of validity may come from any number of sources, including purchaser testimony, consumer surveys, listings and dictionaries, trade journals, newspapers, and other publications."[80]   Additionally, evidence of genericness may come from "generic use by competitors, generic use of the term by the mark's owners, and use of the term by third parties in trademark registrations."[81]

In this case, the marks are compound and also involve an abbreviation or acronym. The Court must determine their validity by looking at the mark as a whole because "[c]ertain terms may connote more than the sum of their parts."[82] However, some composite terms "are nothing more than the sum of their parts.[83] "[I]f the components of a trade name are common descriptive terms, a combination of such terms retains that quality."[84] "Abbreviations for generic or common descriptive phrases must be treated similarly."[85]

It is the Weidner parties' burden to demonstrate that CKM Instructor (CKMI), Certified Knowledge Leader (CKL), and Knowledge Management Certification Board (KMCB) are generic

---

[79]*Retail Services*, 364 F.3d at 544 (internal quotation and citations omitted); *see also Creative Gifts*, 235 F.3d at 544 (citation omitted) and 15 U.S.C. § 1064(3).

[80]*Retail Services*, 364 F.3d at 544 (quotation and citations omitted); *see also Creative Gifts*, 235 F.3d at 545 (citation omitted).

[81]*Retail Services*, 364 F.3d at 544 (quoting *Nartron Corp. v. STMicroelectronics, Inc.*, 305 F.3d 397, 406 (6th Cir. 2002)).

[82]*Liquid Controls Corp. v. Liquid Control Corp.*, 802 F.2d 934, 938 (7th Cir. 1986).

[83]*Id.*

[84]*Nat'l Conference of Bar Examiners v. Multistate Legal Studies, Inc.,* 692 F.2d 478, 488 (7th Cir. 1982).

[85]*Id.* (citation omitted).  *See also Blinded Veterans Ass'n v. Blinded Am.Veterans Found.*, 872 F.2d 1035, 1041 n. 12 (D.C. Cir. 1989) ("[I]f the full name is generic, an abbreviation is treated similarly.").

because these marks are registered with the USPTO. The question with regard to whether these three marks are generic is whether the primary significance to the relevant public is an indication of the general class of product. Neither party specifically defines who the "relevant public" is, but the Court concludes that it is individuals interested in obtaining or purchasing knowledge management training. Here, the Weidner parties offer evidence of dictionary definitions, testimony from several individuals in the knowledge management field regarding certain knowledge management terms, and excerpts from knowledge management articles and books. In addition, the Weidner parties have provided copies of the KMPro parties' registrations with the USPTO as to several of their registered trademarks.[86] The Weidner parties contend that this evidence demonstrates that these marks are generic.

All of the marks at issue are composite marks that also involve an abbreviation or acronym. With regard to the evidence provided by the Weidner parties, it appears to be more specific with respect to Certified Knowledge Manager (CKM) and not the three federally registered marks. In addition, while the Weidner parties have provided the Court with copies of the KMPro parties' registrations, these are not helpful. The USPTO required the KMPro parties to disclaim the phrases apart from the entire mark because they were merely descriptive as they merely describe the feature of the identified services.[87] This would make it appear that the acronym is at issue, but the Court

---

[86]The Weidner parties also provided excerpts from the KMPro parties' trademark applications for CKMI and CKM. As noted above, those trademarks were not included in the Counterclaim and are not specifically at issue in this proceeding because the Court denied the KMPro parties' motion to amend complaint.

[87]As noted above, the Court was not provided with a complete copy of the registration for Certified Knowledge Leader (CKL).

must look at the mark as a whole rather than examining its parts individually.[88] The fact that the USPTO registered the mark, with the disclaimer of the phrase, makes it appear to the Court that the USPTO was also aware of the acronym but nevertheless allowed registration of the marks. As noted above, the USPTO will not register generic marks and there is strong presumption that a mark is not generic if it is registered.

Although the Court finds that the Weidner parties have produced some evidence suggesting the mark is generic, it finds that it is insufficient to overcome the presumption of validity.

### b. Merely Descriptive & Secondary Meaning

The Weidner parties also assert that if these marks are not generic, they are merely descriptive and lack secondary meaning. As stated above, the way in which a mark is registered may affect the presumption of validity. If the USPTO registered the mark without proof of secondary meaning, the registrant is entitled to the presumption that the mark is inherently distinctive. The alleged infringer may rebut the presumption by providing sufficient evidence that the mark is merely descriptive. If the USPTO required the applicant to provide proof of secondary meaning, the registrant is entitled to the presumption that the mark has acquired distinctiveness. In any event, if a mark is registered with the USPTO, there is a presumption that it is not merely descriptive because it must either be inherently distinctive or have acquired distinctiveness.[89]

In this case, it is not clear how the USPTO registered these three marks. The Weidner parties provide argument as to both inherent distinctiveness and acquired distinctiveness. The KMPro

---

[88]*Retail Services*, 364 F.3d at 544 (quotation and citations omitted); *see also Creative Gifts*, 235 F.3d at 545 (citation omitted).
Although the Court recognizes that the abbreviation or acronym appears to be the first letter of each of the composite words, presumably, the USPTO also had this information.

[89]*See Two Pesos*, 505 U.S. at 769.

parties merely state that the marks are § 1(a) Registered Marks. The USPTO required the KMPro parties to disclaim the phrase in the marks as merely descriptive, leaving only the abbreviation at issue. This makes it appear that the marks may have been registered on the basis of secondary meaning, but this is not clear.[90]

Because the record is unclear as to how the three marks at issue were registered and therefore what presumption the KMPro parties are entitled to, the Court will not engage in a detailed analysis with respect to descriptiveness and secondary meaning.[91] Suffice to say, the KMPro parties are entitled to a presumption of validity and the Court concludes that the Weidner parties have not produced sufficient probative evidence at this time to overcome the presumption of validity.[92] Furthermore, if the issue comes down to secondary meaning, the question of whether a trademark has acquired secondary meaning is generally a question of fact and should not be decided in a summary fashion.[93] As such, the Weidner parties' motion for summary judgment as to Count I is denied.

---

[90]This is further complicated by the fact that the abbreviations "CKL," "CKMI," and "CKM" now appear to be federally registered. The parties disagree as to whether they were registered on the basis of secondary meaning in part or in whole. As noted above, they are not included in the KMPro parties' complaint and were registered two years after the KMPro parties' complaint was filed. As such, these marks are not at issue.

[91]While there may not be any additional evidence as to how the USPTO registered these marks, this was not pointed out to the Court. If there is not this information, the Court will address this issue at trial.

[92]The same type of evidence required to rebut the presumption that the marks are not generic is required to rebut the presumption that the marks are inherently descriptive. At trial, it will ultimately be the KMPro parties' burden to establish trademark infringement.

[93]*Marker Int'l v. DeBruler*, 844 F.2d 763, 764 (10th Cir. 1988).

## 2. Count III (Kansas Trademark Act) - Certified Knowledge Manager (CKM)

Certified Knowledge Manager (CKM) is not federally registered, but it is registered in Kansas. "The Kansas Trademark Act is the state counterpart of the Lanham Act."[94] K.S.A. § 81-220(b) states:

> The intent of this act is to provide a system of state trademark registration and protection substantially consistent with the federal system of trademark registration and protection under the trademark act of 1946, as amended. To that end, the construction given the federal act should be examined as persuasive authority for interpreting and construing this act.

The elements of proof under both the Kansas Trademark Act and the federal Lanham Act "are identical - in order to claim a protected interest, the party must establish ownership of, or a protectable interest in, the trademark."[95]

Although the Kansas Trademark Act is a counterpart to the Lanham Act and construction of the federal act should be examined as persuasive authority, the mark registered in Kansas is not entitled to a presumption of validity.[96] Under the Lanham Act, there is a statutory presumption of validity with respect to registered marks. 15 U.S.C. § 1115(a) provides that "a mark registered on the principal register . . . shall be admissible in evidence and shall be prima facie evidence of the validity of the registered mark . . . ." This presumption is not provided by the Kansas Trademark

---

[94]*Am. Plastic Equip., Inc. v. Toytrackerz, LLC*, 2008 WL 917635, at *8 (D. Kan. Mar. 31, 2008).

[95]*Id.* at *12.

[96]Neither party addresses the presumption of validity in Case No. 06-2381 nor in Case No. 06-2461. The Weidner parties simply address the mark as an unregistered mark not entitled to a presumption of validity presumably because it is not registered with the USPTO. The KMPro parties do not provide a response. However, in Case No. 06-2195, the KMPro parties assert that the Kansas mark is entitled to a presumption of validity. Whether the Kansas mark is entitled to a presumption of validity is a question of law that the Court must answer when determining whether the mark is protectable.

Act.[97]

In addition, it appears that the requirements for registering a mark in Kansas do not involve the same requirements as registering a mark with the USPTO. There are no provisions in the Kansas Trademark Act similar to the Lanham Act which provide for a detailed application process, publication of the application, and an examination by an examiner.[98] Indeed, it appears that the KMPro parties filed their application for registration of this mark in early February 2006, and the registration was granted within days.[99] Because Kansas does not have the detailed and structured requirements for registering marks as the Lanham Act and does not specifically provide for a statutory presumption of validity upon registration, there is no presumption of validity with respect to the mark registered in Kansas. Accordingly, the KMPro parties have the burden in demonstrating that they have a valid and protectable mark and that it is not generic.

The Weidner parties contend that this mark is generic.[100] Here, the Weidner parties set forth evidence of testimony from several individuals in the knowledge management field, including key

---

[97]The Kansas Court of Appeals recognizes that there may be provisions in the Kansas Trademark Act that differ from the federal Lanham Act. *See, e.g, Harp v. Appliance Mart, Inc*., 16 Kan. App. 2d 696, 699, 827 P.2d 1209, 1212 (1992) (interpreting Kansas' previous Trademark Act and stating that "[w]hen Kansas enacted its law, it chose not to include that portion of the federal law granting protection to a mark that has become distinctive based on continuous use for five years.").

[98]*See, e.g.*, 15 U.S.C. § 1051 (application for registration; verification).

[99]The KMPro parties' complaint and counterclaims allege that they filed their registration for the mark, Certified Knowledge Manager (CKM), on February 9, 2006 and were granted the registration on February 13, 2006. Documents provided in Case No. 06-2195 demonstrate that the mark was registered on February 9, 2006, and it is unclear whether it was filed on February 9, 2006 or February 1, 2006. In any event, at the most, a time period of eight days elapsed between application and registration of this mark in Kansas.
In the KMPro parties' response to Triple-I's motion for summary judgment in Case No. 06-2195, they contend that eight days is more than sufficient for a state employee to conclude that the mark is not generic. They, however, do not direct the Court to any evidence for support. There is no case law regarding the presumption of validity with respect to a mark registered in Kansas.

[100]The law set forth with respect to whether a mark is generic is applicable here as well.

-29-

individuals from KMPro, that the term "knowledge manager" generally refers to a job title or person working the knowledge management field. The dictionary definition for "certified" indicates "one to whom a certificate or license has been issued." In addition, the Weidner parties have provided excerpts of several knowledge management books and articles reflecting the use of certified knowledge manager, as well as a job posting for a Certified Knowledge Manager. There is also evidence that CKM is a commonly used acronym for certified knowledge manager.

Furthermore, the Weidner parties have provided a copy of Douglas Weidner's USPTO application in which the examining attorney found that the proposed mark merely describes the goods/services. The USPTO's examining attorney stated that it was merely descriptive of the subject matter of the applicant's services and that Certified Knowledge Manager and CKM were common industry terms. Because of the widespread use of these terms, the USPTO's examining attorney refused Weidner's application.

Although it is the KMPro parties' burden to demonstrate that they have a protectable mark, they have failed to come forward with evidence. The KMPro parties have not provided the Court with *any* evidence, such as consumer surveys or the use of the term in media publications indicating that the term Certified Knowledge Manager (CKM) is not generic or merely descriptive. As noted, the KMPro parties do not specifically respond to the motion in Case No. 06-2381 and with respect to the response filed in Case No. 06-2461, they provide no evidence for support of their contentions and denials as they do not attach any exhibits and frequently fail to cite to the record.[101]

---

[101]With respect to the KMPro parties' response in Case No. 06-2195, they simply do not direct the Court to any relevant evidence that demonstrates that there is a question of fact with respect to whether this term is not generic.

Here, the mark Certified Knowledge Manager (CKM) is a combination of three words, all individually disclaimed, followed by an acronym that is the first letter of these three words. The combination of these three component words does not change the genericness or descriptiveness of the three component words. The words simply indicate that an individual is a certified knowledge manager. The acronym CKM, as recognized by the USPTO examining attorney and numerous individuals involved in the knowledge management field, simply stands for certified knowledge manager. Here, the term indicates a general class of goods and merely describes the type of product.

The Weidner parties have put forth evidence as to the genericness of this term and it appears that the KMPro parties have simply not directed the Court to any relevant evidence that this term is not generic. As such, the Weidner parties are granted summary judgment as to Count III.

### 3. Count II (Unfair Competition under 15 U.S.C. § 1125(a)); Count IV (Common Law Unfair Competition); Count VI (Contributory Trademark Infringement); and Count VII (Cybersquatting)

As to Counts II, IV, VI, and VII, ownership of a distinctive and protectable mark is also an essential prerequisite of each of these claims.[102] Relying on their previous argument that the marks are neither distinctive nor protectable, the Weidner parties contend that they are entitled to summary judgment as to these four claims. For the reasons stated above that the Court cannot conclude as a matter of law that the three federally registered marks are not distinctive and protectable, the Court

---

[102]*See Univ. of Kansas v. Sinks*, 565 F. Supp. 2d 1216, 1256-57 (D. Kan. 2008) (citing *Donchez*, 392 F.3d at 1215)) (as to Count II); *Health Care & Ret. Corp. of Am. v. Heartland Home Care, Inc.*, 396 F. Supp. 2d 1262, 1268 (D. Kan. 2005) (as to Count IV); *The Golf Warehouse*, 142 F. Supp. 2d at 1312 (as to Count VII).

With respect to Count VI (the KMPro parties' contributory trademark infringement claim), the Court notes that "if a manufacturer or distributor intentionally induces another to infringe a trademark, or if it continues to supply its product to one whom it knows or has reason to know is engaging in trademark infringement, the manufacturer or distributor is contributorily responsible for any harm done as a result of the deceit." *Inwood Labs., Inc. v. Ives Labs., Inc.*, 456 U.S. 844, 854 (1982). "The elements of a contributory liability claim are thus (1) supply of a product and (2) knowledge of direct infringement." *Procter & Gamble Co. v. Haugen*, 317 F.3d 1121, 1128 (10th Cir. 2003). While a protectable mark is not stated as an essential element, it stands to reason that there cannot be contributory trademark infringement without an underlying protectable trademark.

denies the Weidner parties' motion for summary judgment as to these four counts with respect to the three federally registered marks. With respect to the mark registered in Kansas, because the Court has concluded that there is no protectable interest in this mark, the Court grants the Weidner parties' motion for summary judgment on these four counts with respect to the mark registered in Kansas.

### 4. Count V - Tortious Interference with Business Expectancies

The parties cite to both Virginia and Kansas law. Under Virginia law, the elements required for a prima facie showing of tortious interference are:

> (I) the existence of a valid contractual relationship or business expectancy; (ii) knowledge of the relationship or expectancy on the part of the interferor; (iii) intentional interference inducing or causing a breach or termination of the relationship or expectancy; and (iv) resultant damage to the party whose relationship or expectancy has been disrupted.[103]

Under Kansas law, the required elements are:

> (1) the existence of a business relationship or expectancy with the probability of future economic benefit to the plaintiff; (2) knowledge of the relationship or expectancy by the defendant; (3) that, except for the conduct of the defendant, plaintiff was reasonably certain to have continued the relationship or realized the expectancy; (4) intentional misconduct by defendant; and (5) damages suffered by plaintiff as a direct or proximate cause of defendant's misconduct.[104]

Under either Virginia or Kansas law, knowledge of the relationship or expectancy on the part of the interferor is required. Here, Douglas Weidner, Eric Weidner, Brandon Weidner, and Wendy Johnson Weidner assert that they and KM Mentor and IKMI were not aware of any business relationship between KMPro or Hudson and the U.S. Army or Cubic Defense Applications. The

---

[103]*DurretteBradshaw, P.C. v. MRC Consulting, L.C.*, 670 S.E. 2d 704, 706 (Va. 2009).

[104]*Turner v. Halliburton Co.*, 240 Kan. 1, 12, 722 P.2d 1106, 1115 (1986).

KMPro parties have not directed the Court to any evidence showing that there is a genuine issue of material fact as to whether Douglas Weidner, Eric Weidner, Brandon Weidner, Wendy Johnson Weidner, KM Mentor, or IKMI had knowledge of the KMPro parties' business relationship or expectancy with the U.S. Army and its contractor, Cubic. Furthermore, the KMPro parties have not directed the Court to any evidence as to the existence of a business relationship or expectancy with respect to the U.S. Army or its contractor, Cubic. Finally, the KMPro parties have not directed the Court to any evidence as to the other elements of a tortious interference claim. As such, the Weidner parties are entitled to summary judgment on the KMPro parties' tortious interference claim.

### 5. Count X - Civil Conspiracy to Tortiously Interfere, Infringe Marks, and Unfairly Compete

"A civil conspiracy is a combination of two or more persons by concerted action to accomplish an unlawful purpose, or to accomplish some purpose not in itself unlawful by unlawful means."[105] The Weidner parties contend that there is no evidence that they entered into an agreement to perform an illegal act or perform a legal act in an improper manner. Brandon Weidner, Eric Weidner, and Wendy Johnson Weidner all provide affidavits in which they assert that they never agreed with any other person to tortiously interfere with any contract or business relationship of Plaintiff, to infringe any trademark rights belonging to Plaintiffs, or to unfairly compete with them in any way. In addition, Douglas Weidner provides an affidavit in which he states that he is the sole owner and manager of IKMI, and IKMI has never directly employed anyone.

In response, the KMPro parties do not direct the Court or provide the Court with any evidence indicating a genuine issue with respect to whether a conspiracy existed. Accordingly, the

---

[105] *See Ross v. Peck Iron & Metal Co.*, 264 F.2d 262, 268 (4th Cir. 1959); *see also Stoldt v. City of Toronto*, 234 Kan. 957, 966-67, 678 P.2d 153, 161 (1984).

Weidner parties are granted summary judgment on this claim.

Accordingly, the Weidner parties are denied summary judgment as to Count I and granted summary judgment as to Counts III, V, and X. With respect to Counts II, IV, VI, and VII, the Weidner parties are granted summary judgment in part with respect to the Kansas mark and denied summary judgment in part with respect to the three federally registered marks.

### 6. Individual Wendy Johnson Weidner

"The plain language of the sections of the Lanham Act addressing trademark infringement and unfair competition create individual liability for damage under the Act because both sections begin with the language '[a]ny person who . . . .'"[106] Therefore, "[u]nder the Lanham Act, an employee is not shielded from liability solely because the infringing actions were within the scope of his or her employment."[107] The key inquiry is whether the individual employee participated in the acts.[108]

Here, the Weidner parties contend that the record is devoid of evidence which would be sufficient to hold Wendy Johnson Weidner liable for any claim. Ms. Weidner provides an affidavit in which she states that she owns 10% of KM Mentor and provided administrative assistance to KM Mentor from 2001 through 2006. She states that she has never had or exerted control over KM Mentor or IKMI and did not direct, cause, or actively participate in any of the conduct alleged in the Second Amended Complaint. In addition, Ms. Weidner contends that she never had any input on

---

[106]*Axion Power Battery Mfg., Inc. v. T & L Sales, Inc.*, 2009 WL 385539, at *3 (W.D. Pa. Feb. 13, 2009) (citing *Heartland Payment Sys., Inc. v. Merchant Servs. of America Corp.*, 2006 WL 3779764, at *5 (D.N.J. 2006) (citing 15 U.S.C. § 1114(1); 15 U.S.C. § 1125(a)(1))).

[107]*Id.* (citing *Metromedia Steakhouses Co., L.P. v. Resco Mgmt., Inc.*, 168 B.R. 483, 486 (D.N.H. 1994)).

[108]*Metromedia,* 168 B.R. at 487 (citing *Donsco, Inc. v. Casper Corp.*, 587 F.2d 602, 606 (3d Cir. 1978)).

the choice or use of marks by KM Mentor nor did she use the marks in the course of her employment with the intent of misleading consumers to believe that its products or services were being provided by any other people.

The KMPro parties direct the Court to no evidence indicating that there is a genuine issue of material fact with respect to these issues. The KMPro parties do not provide any evidence as to Ms. Weidner's participation or involvement. As such, the Court grants Wendy Johnson Weidner's motion for summary judgment as to individual liability on all claims.

**IT IS ACCORDINGLY ORDERED** this 14th day of May, 2010 that the Weidner parties' Motion for Judgment on the Pleadings (Doc. 61) in Case No. 06-2461 is hereby granted.

**IT IS FURTHER ORDERED** the Weidner parties' Motion for Partial Summary Judgment (Doc. 63) in Case No. 06-2461 is hereby granted in part and denied in part. It is denied as to Count I and granted as to Counts III, V, and X. With respect to Counts II, IV, VI, and VII, the Weidner parties are granted summary judgment in part with respect to the Kansas mark and denied summary judgment in part with respect to the three federally registered marks. With respect to Wendy Johnson Weidner, it is granted in its entirety.

**IT IS SO ORDERED**.

/s Eric F. Melgren
ERIC F. MELGREN
UNITED STATES DISTRICT JUDGE