# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

HUDSON ASSOCIATES CONSULTING,
INC., et al.,

*Plaintiffs*,

vs.                                                          Case No. 06-2461-EFM

ERIC WEIDNER, et al.,

*Defendants.*

## MEMORANDUM AND ORDER

"Knowledge is a process of piling up facts; wisdom lies in their simplification."[1]  This case involves several parties engaged in the knowledge management field, a field that creates and uses data and information to manage knowledge. The proceedings so far have been highly contentious, and the parties have compiled numerous facts but have not simplified the process.

Before the Court in Case No. 06-2461 are Robert Spachman's, Ron Dysvick's and Knowledge Central Corporation's motions for summary judgment (Docs. 59, 66, 67, 68, and 69).[2]

---

[1]Martin H. Fischer, *Encore: A Continuing Anthology,* "Fischerisms" p. 309 (Dent Smith ed., 1945); *also available at* http://km.nasa.gov/whatis/KM_Quotes.html.

[2]Spachman was chairman of Triple-I. Dysvick was President of Triple-I until at least January 2007. Knowledge Central Corporation is a business associated with Dysvick.
    There are two other pending motions in this case involving separate parties (Docs. 61, 63). These motions were addressed in a separate order.

All motions have been briefed.

As described in detail below, the Court denies Docs. 66, 67, 68, and 69 and grants Doc. 59.

## I. General Background and Applicable Procedural Rules

There are three cases that are related. These include *Triple-I v. Hudson Associates Consulting, Inc. et al.*, No. 06-cv-2195-EFM-KMH (the "Triple-I Case");[3] *KMMentor, LLC et al. v. Knowledge Management Professional Society, Inc. et al.*, No. 06-cv-2381-EFM-KMH (the "KM Mentor Case");[4] and *Hudson Associates Consulting, Inc. et al. v. Eric Weidner, et al.*, No. 06-cv-2461-EFM-KMH (the "Hudson Case").[5] With respect to the parties, the Court will generally refer

---

[3]In Case No. 06-2195, the plaintiff is Triple-I. The defendants and counter-plaintiffs are Hudson Associates Consulting, Inc. and Knowledge Management Professional Society. The remaining Triple-I claims are: (1) cancellation of trademark under K.S.A. § 81-210; (2) tortious interference with business advantage; (3) cancellation of the mark "Certified Knowledge Leader (CKL)" under the Lanham Act; and (4) cancellation of the mark "CKM Instructor (CKMI)" under the Lanham Act. Two claims, fraudulent representation under K.S.A. § 81-212 and cancellation of the Kansas and Virginia marks under the Lanham Act, were previously dismissed.
     The KMPro parties' counterclaims are: (1) trademark infringement under 15 U.S.C. § 1114; (2) unfair competition under 15 U.S.C. § 1125; (3) state trademark acts; (4) common law unfair competition; (5) tortious interference with business expectancies; (6) contributory trademark infringement; and (7) civil conspiracy to tortiously interfere, infringe marks, and unfairly compete.

[4]In Case No. 06-2381, the plaintiffs are KM Mentor and Douglas Weidner ("KM Mentor"). The defendants and counter-plaintiffs are Hudson Associates Consulting, Inc., Knowledge Management Professional Society, Dan Kirsch, John Leitch, and Wayne Hulehan ("the KMPro parties"). None of the parties in Case No. 06-2381 reside in Kansas.
     KM Mentor's remaining claims are: (1) copyright infringement; (2) contributory copyright infringement; (3) infringement of trademark acts; (4) cybersquatting; (5) fraud; (6) conversion; (7) unfair competition; (8) false advertising under Virginia law; (9) breach of contract; (10) unjust enrichment; (11) misappropriation of trade secrets; and (12) conspiracy to injure trade or business. KM Mentor's defamation claim was previously dismissed.
     The KMPro parties' counterclaims are: (1) trademark infringement under 15 U.S.C. § 1114; (2) unfair competition under 15 U.S.C. § 1125; (3) revised Kansas Trademark Act; (4) common law unfair competition; (5) tortious interference with business expectancies; (6) contributory trademark infringement; (7) cybersquatting; (8) breach of contract; (9) Virginia Computer Crimes Act violations; (10) civil conspiracy to tortiously interfered, infringe marks, and unfairly compete; (11) declaration of copyright and common law trademark unenforceability; (12) conversion; and (13) fraud.

[5]In Case No. 06-2461, the plaintiffs are Hudson Associates Consulting, Inc., Knowledge Management Professional Society, and Dan Kirsch ("the KMPro parties"). The defendants are Eric Weidner, Wendy Weidner, Brandon Weidner, International Knowledge Management Institute (IKMI), Ronald Dysvick, Robert Spachman, and Knowledge Central Corporation. None of the parties in Case No. 06-2461 reside in Kansas.
     The KMPro parties' claims are: (1) trademark infringement under 15 U.S.C. § 1114 (against all named defendants); (2) unfair competition under 15 U.S.C. § 1125 (against all named defendants); (3) revised Kansas Trademark Act (against all named defendants); (4) common law unfair competition (against all named defendants);

to Knowledge Management Professional Society ("KMPro"), Hudson Associates Consulting, Inc. ("Hudson"), Dan Kirsch, John Leitch and Wayne Hulehan as the KMPro parties. KMMentor, LLC and Douglas Weidner will be collectively referred to as KMMentor. International Knowledge Management Institute, LLC ("IKMI"), Eric Weidner, Brandon Weidner, and Wendy Johnson Weidner will be collectively referred to as the Weidner parties. Generally, KM Mentor and the Weidner parties are aligned.

The first case, Case No. 06-2195, was filed in the District of Kansas. The second case was filed in the Eastern District of Virginia but was later transferred to the District of Kansas on September 12, 2006. The third case was filed in the District of Kansas on October 24, 2006. These three cases are consolidated for purposes of discovery because they all involve similar claims and counterclaims regarding certain service marks. The order consolidating the three cases states that pleadings related to dispositive motions should be filed in the specific case.

The Court is now considering numerous dispositive motions. In Case No. 06-2195, there are four pending motions for partial summary judgment. In Case No. 06-2381, there is one pending motion for judgment on the pleadings, three pending motions for partial summary judgment, and a motion to strike an affidavit attached to a summary judgment motion. In all, there are five motions pending in Case No. 06-2381. In Case No. 06-2461, there are seven pending motions for partial summary judgment or motion for judgment on pleadings. In total, the Court is considering sixteen motions related to these three cases.

_____

(5) tortious interference with business expectancies (against all named defendants); (6) contributory trademark infringement (against all named defendants); (7) cybersquatting (against IKMI and Weidners); (8) Virginia Computer Crimes Act violations (against IKMI and Weidners); (9) defamation (against Knowledge Central and Dysvick); (10) civil conspiracy to tortiously interfere, infringe marks, and unfairly compete (against all named defendants); and (11) declaration of copyright and common law trademark unenforceability (against IKMI and Weidners).

The required rules for summary judgment motions in the District of Kansas are set forth in

D. Kan. Rule 56.1. D. Kan. Rule 56.1(a) addresses supporting memorandums for summary

judgment.

> The memorandum or brief in support of a motion for summary judgment must begin with a section that contains a concise statement of material facts as to which the movant contends no genuine issue exists. The facts must be numbered and must refer with particularity to those portions of the record upon which movant relies. All material facts set forth in the statement of the movant will be deemed admitted for the purpose of summary judgment unless specifically controverted by the statement of the opposing party.

D. Kan. Rule 56.1(b) addresses opposing motions for summary judgment. It states:

> (1) A memorandum in opposition to a motion for summary judgment shall begin with a section that contains a concise statement of material facts as to which the party contends a genuine issue exists. Each fact in dispute shall be numbered by paragraph, shall refer with particularity to those portions of the record upon which the opposing party relies, and, if applicable, shall state the number of movant's fact that is disputed.
> (2) If the party opposing summary judgment relies on any facts not contained in movant's memorandum, that party shall set forth each additional fact in a separately numbered paragraph, supported by references to the record, in the manner required by subsection (a), above. All material facts set forth in this statement of the non-moving party shall be deemed admitted for the purpose of summary judgment unless specifically controverted by the reply of the moving party.

"[I]t is the duty of the parties contesting a motion for summary judgment to direct the court

to those places in the record where evidence exists to support their positions."[6]  The Court will not

sift through the record in an attempt to find a genuine issue of material fact or locate arguments for

---

[6]*Boldridge v. Tyson Foods, Inc.*, 2007 WL 1299197, at *2 (D. Kan. May 2, 2007) (citing *Caffree v. Lundahl*, 143 Fed. Appx. 102, 106 (10th Cir. 2005) and *SIL-FLO, Inc. v. SFHC, Inc.*, 917 F.2d 1507, 1513-14 (10th Cir. 1990) (stating that not only will the court not sift through the record to find support for an argument, the court will not manufacture arguments for the party)).

the parties.[7] It is the party's responsibility to tie the facts to its legal contention.[8] "Without a specific reference, 'we will not search the record in an effort to determine whether there exists dormant evidence which might require submission of the case to a jury.'"[9]

There are numerous issues with the parties' motions and memorandums. With respect to three of Knowledge Central's, Dysvick's, and Spachman's memorandums in Case No. 06-2461 (Docs. 71, 72, and 73), they wholly fail to comply with District of Kansas local rules and summary judgment rules. They do not provide a concise statement of material facts referring with particularity to the portions of the record upon which they rely because there is *no* factual statement. They instead state that they incorporate by reference arguments made in Triple-I's similar memorandum filed in Case No. 06-2195.[10] They fail to reference the factual statements in the separate case. In addition, they direct the Court to additional motions filed in Case No. 06-2195.

The parties' attempt to incorporate by reference numerous documents filed in separate cases and dealing with separate parties is improper. While the Court is aware that the claims in these three cases are all very similar, the responsibility is on the parties to demonstrate how they overlap or differ. It also is the parties' responsibility to present their facts, arguments, and authorities in an understandable fashion. If the parties are seeking a ruling on a discreet issue, they cannot incorporate by reference their arguments with regard to other issues and expect the Court to know which facts

---

[7]*Boldridge*, 2007 WL 1299197, at *2; *see also Cross v. The Home Depot*, 390 F.3d 1283, 1291 (10th Cir. 2004).

[8]*Boldridge*, 2007 WL 1299197, at *2 (citation omitted).

[9]*Gross v. Burggraf Const. Co.*, 53 F.3d 1531, 1546 (10th Cir. 1995) (citations omitted). *See also United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991) ("Judges are not like pigs, hunting for truffles buried in briefs.").

[10]While the Court recognizes that Dysvick and Spachman both worked at Triple-I, they are separate parties in Case No. 06-2461 and are not parties to Case No. 06-2195. Knowledge Central Corporation is also a separate party.

or arguments apply to their specific issue. In particular, they cannot incorporate by reference their arguments and expect the Court to know that they meant to incorporate their facts and not provide any discussion as to how those facts relate to the parties and claims at issue.

**II. Dysvick's, Spachman's, and Knowledge Central Corporations' Motion for Summary Judgment in Case No. 06-2461 (Docs. 66, 67, 68, and 69)**

As noted above, three of Knowledge Central's, Dysvick's, and Spachman's memorandums fail to comply with summary judgment standards as no facts are asserted. They also fail to incorporate by reference their facts from the separate motions and memorandums filed in Case No. 06-2195.[11] The parties in Case No. 06-2461 are entirely different from the party in Case No. 06-2195.

Furthermore, the Court cannot discern from the facts asserted in Case No. 06-2195 how they specifically relate to the claims against Knowledge Central, Dysvick, and Spachman.[12] The Court granted Triple-I's motions in Case No. 06-2195, but it unfortunately cannot grant Knowledge Central's, Dysvick's, and Spachman's motions due to their failure to provide the Court appropriate facts. As such, Knowledge Central's, Dysvick's, and Spachman's motions for summary judgment (Docs. 66, 67, and 68) are denied.

With respect to Knowledge Central's, Dysvick's, and Spachman's motion for summary judgment (Doc. 69) that they cannot be held individually liable, the Court also cannot grant this motion. While Dysvick claims that Knowledge Central originally contemplated providing some

---

[11]In Knowledge Central's, Dysvick's, and Spachman's reply, they assert that the facts were necessarily incorporated in their argument section. The Court does not agree.

[12]In fact, the factual statement does not reference Knowledge Central and there is only passing references to Dysvick and Spachman.

services in the knowledge management field through Knowledge Central but has not provided services and "as of now" does not intend to provide services in the knowledge management field, this does not provide facts or address the specific claims against Knowledge Central. The fact that Knowledge Central may not have provided services in the knowledge management field does not mean that Knowledge Central was not involved in the asserted claims.

Nothing in the seven alleged claims requires that Knowledge Central be in the specific field of knowledge management, and this memorandum fails to specifically address Knowledge Central's role. In addition, there are no facts given with respect to Dysvick and Spachman. Although they attempt to reference by incorporation arguments and authorities in two other memorandums in Case No. 06-2195, they have not explained to the Court how this is relevant or specific with respect to the role these individuals may have played. As such, Knowledge Central's, Dysvick's, and Spachman's motion for summary judgment (Doc. 69) is denied.

### III. Dysvick's and Knowledge Central Corporation's Motion for Summary Judgment as to the KMPro Parties' Defamation Claim (Doc. 59)

#### A. Uncontroverted Facts

Dan Kirsch lives in Virginia Beach, Virginia. Ron Dysvick is a resident of Missouri and lives in Lee's Summit, Missouri. Knowledge Central Corporation is a Missouri corporation with its principal place of business in Grain Valley, Missouri. Knowledge Central owns and operates a liquor store in Grain Valley and has also been involved in the field of knowledge management.

The KMPro parties allege that Dysvick, and through him, Knowledge Central, committed an act of defamation. The email at issue is an email from Dysvick to Aaron Ambrose, Chief of the Grain Valley Police Department, on November 12, 2007 at 12:53 p.m. It is as follows:

Subject: Stalking Behavior

Dear Chief Ambrose:

A man I believe to be named Dan Kirsch followed me from my house to my store in Grain Valley the morning of November 9, 2007 in a white Chrysler Pacifica. He parked across the parking lot from my store. He came into my store (Discount Liquor) and began walking around acting as if he was measuring the dimensions, kneeling down as if to take measurement. I asked him what he was doing and he replied, "you'll find out." He then began walking back into the rear area of the store marked, "Private, Employees Only." I asked him what he thought he was doing and he said, "you'll find out soon enough." I asked him to leave and he said, "this is a public place." He walked around all the isles and then walked to the front of the store. I said, "I know who you are." He said, "you probably have me mistaken for someone." He stood in the front of the store and stared at the wall behind the counter for a couple of minutes. He said, "I'll see you again" and then walked out to his car (i.e a white Chrysler Pacifica with Missouri plates of 714 YSY). This wa the car that followed me from my home. The car was parked across the parking lot. He remained in his car for approximately 10 minutes before departing. Although I've never met this person before, I believe him to be Daniel Kirsch of the state of Virgnia. I do not feel comfortable with this person following me around and behaving in a manner that is meant to intimidate.

I've provided a photo that I procured from Dan Kirsch's website. It is without question the same person that is following me.
 [Picture Attached]

Sincerely,
Ron Dysvick

Dysvick states that on November 12, 2007, he attempted to send the email three times to Chief Ambrose but believed he was only successful on the fourth try.[13] On November 20, 2007, Dysvick filed and served a Motion for Protective Order in this Court based on the alleged events set forth in the November 12, 2007 Ambrose email.[14] Dysvick sought a protective order restraining the KMPro parties from entering the premises owned by any of the movants and from performing any

---

[13]In Dysvick's deposition, he testified that the first three came back rejected but the fourth did not. The KMPro parties argue that it is unclear where the email went the first three times and that they are entitled to an adverse inference instruction because Dysvick has not produced documents to support the contention that the email was sent three times unsuccessfully. They have not provided the Court with any evidence to support this contention.

[14]Doc. 201 in Case No. 06-2195. Attached to the motion were several exhibits, and the November 12, 2007 email exhibit was categorized as "Exhibit Police Report."

surveillance of such persons during the pendency of the litigation. Judge O'Hara granted and entered a Protective Order and required the parties to use the formal discovery procedures mandated by the Federal Rules of Civil Procedure, specifically Fed. R. Civ. P. 34.[15]

Chief Ambrose did not see or receive the November 12, 2007 email until he was shown the email by Ms. Smiley, the KMPro parties' attorney, sometime in December of 2007 when Ms. Smiley obtained a declaration from Chief Ambrose. In Chief Ambrose's undated declaration, he states that he had not seen the email until he was shown it that day and did not receive it in his email.[16] He also states that the department has a procedure for citizens to make police reports and Dysvick did not use that procedure. Chief Ambrose states that the email would not be considered a police report even if he had received it.

In Chief Ambrose's declaration of June 15, 2009, he states that he had not seen the November 12, 2007 email until Ms. Smiley asked him some questions and showed him the email in November or December of 2007. He states that he told Ms. Smiley that if he did not receive such an email addressed to him, no one else in the police department would have received it. In addition, Chief Ambrose states that although the email was not in the format the department requires for a formal police report, if it had been received by him or anyone in the department, they would have contacted Dysvick about it because they have been assigned the duty to respond to such messages.

---

[15]Doc. 205 in Case No. 06-2195. The KMPro parties did not file a timely response to the motion and have asserted several different reasons as to why they did not file a response. In any event, Judge O'Hara stated in his Order that although he could have entered the Protective Order solely on the basis that the KMPro parties failed to respond, he would address the merits of the motion.

[16]The parties sometimes state that this declaration occurred on December 5, 2007. The declaration is not dated but it had to have been done at least by December 31, 2007 because that was the date it was originally filed with the Court. *See* Doc. 212, Exb. 4 in Case No. 06-2195.

Kirsch admits that he was in Grain Valley on November 9, 2007 and was driving a white Chrysler Pacifica. He states that he went to Grain Valley to check out a business address listed on the annual report of Knowledge Central Corporation because Knowledge Central was not currently a party to the KMPro parties' trademark infringement lawsuit but there was a potential that Knowledge Central was going to be added as a party.[17] When Kirsch found the address that he believed was the one listed on Knowledge Central's annual report, he was "astonished" because it was a liquor store, Discount Liquor and Smokes.[18] He took several pictures of the outside and then went inside briefly to determine if it was a liquor store. Kirsch states that when he was leaving, an employee behind the counter asked him if he knew him to which Kirsch responded "I don't think so." After Kirsch went back outside, he drove around to the opposite side of the building and parked for about 10 minutes.

**B. Legal Standard**

Summary judgment is appropriate if the moving party demonstrates that "there is no genuine issue as to any material fact" and that it is "entitled to judgment as a matter of law."[19] "An issue of fact is 'genuine' if the evidence allows a reasonable jury to resolve the issue either way."[20] A fact is "material" when "it is essential to the proper disposition of the claim."[21] The court must view the evidence and all reasonable inferences in the light most favorable to the nonmoving party.[22]

---

[17]Knowledge Central was subsequently added.

[18]There was no actual address on the building for 104, but it was between addresses 102 and 106.

[19]Fed. R. Civ. P. 56©).

[20]*Haynes v. Level 3 Communications*, LLC, 456 F.3d 1215, 1219 (10th Cir. 2006).

[21]*Id.*

[22]*LifeWise Master Funding v. Telebank*, 374 F.3d 917, 927 (10th Cir. 2004).

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact.[23] In attempting to meet this standard, the moving party need not disprove the nonmoving party's claim; rather, the movant must simply point out the lack of evidence on an essential element of the nonmoving party's claim.[24]

If the moving party carries its initial burden, the party opposing summary judgment cannot rest on the pleadings but must bring forth "specific facts showing a genuine issue for trial."[25] The opposing party must "set forth specific facts that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant."[26] Conclusory allegations alone cannot defeat a properly supported motion for summary judgment.[27] The nonmovant's "evidence, including testimony, must be based on more than mere speculation, conjecture, or surmise."[28] The Court is also cognizant that it may not make credibility determinations or weigh the evidence when examining the underlying facts of the case.[29]

---

[23]*Thom v. Bristol-Myers Squibb Co.*, 353 F.3d 848, 851 (10th Cir. 2003)(citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)).

[24]*Id.* (citing *Celotex*, 477 U.S. at 325.)

[25]*Garrison v. Gambro, Inc.*, 428 F.3d 933, 935 (10th Cir. 2005).

[26]*Mitchell v. City of Moore, Okla.*, 218 F.3d 1190, 1197 (10th Cir. 2000)(citing *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998).

[27]*White v. York Int'l Corp.*, 45 F.3d 357, 363 (10th Cir. 1995).

[28]*Bones v. Honeywell Intern, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004).

[29]*Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986).

**C. Analysis**

*1. Choice of Law*

The parties disagree as to which state's law applies to the defamation claim brought against

Dysvick and Knowledge Central. Kirsch, Hudson, and KMPro bring the defamation claim. Kirsch

and Hudson are considered Virginia's residents, while KMPro is incorporated in Maryland.

A federal court sitting in diversity must apply the choice of law rules of the state in which

it sits.[30] In Kansas, defamation claims are governed by the law of the state where the wrong was

felt.[31] Generally, Kansas courts have determined that where the wrong was felt is the location of the

plaintiff's residency.[32]

The KMPro parties assert that Kansas law applies because the place of the last act necessary

to complete the tort (reputation injury) is Kansas, and the heart of this dispute involves the damage

done to the KMPro parties with their customers at Fort Leavenworth.[33] The KMPro parties also

contend that Kansas cases do not stand for the proposition that the place of plaintiff's domicile is

the place of injury but instead stand for the proposition that the applicable law is the place where

the last event necessary to impose liability occurred. The Court does not agree. These cases state

---

[30]*Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941).

[31]*Snyder v. American Kennel Club*, 661 F. Supp. 2d 1219, 1230 (D. Kan. 2009) (citing *Ling v. Jan's Liquors*, 237 Kan. 629, 634, 703 P.2d 731, 735 (1985)); *see also Bushnell Corp. v. ITT Corp.*, 973 F. Supp. 1276, 1286 n. 2 (D. Kan. 1997) (citation omitted).

[32]*See Snyder*, 661 F. Supp. 2d at 1230 (finding that "because the plaintiffs are Kansas residents, any financial or reputational injury they suffered from the alleged torts would have been felt here, thus these claims are governed by Kansas substantive law."). *See also Boe v. AlliedSignal Inc.*, 131 F. Supp. 2d 1197, 1206 (D. Kan. 2001) (applying Maryland law to plaintiff's defamation claim because plaintiff lived in Maryland when the alleged wrong occurred)*; Lawrence-Leiter & Co. v. Paulson*, 963 F. Supp. 1061, 1065 (D. Kan. 1997) (applying Kansas law because plaintiff's domicile of Kansas was the situs of plaintiff's injury from the allegedly defamatory statements).

[33]Despite the fact that the KMPro parties argue extensively that Kansas law applies, they fail to provide the Court with any law relating to Kansas defamation actions. They also fail to provide the Court with any evidence as to how their reputation was damaged with their customers at Fort Leavenworth.

that the tort occurred *where the wrong was felt* and then interpret this to mean the state in which the plaintiff resides.[34] In addition, the KMPro parties' reliance on the primary case it cites, *Rigby v. Clinical Reference Laboratory, Inc.*,[35] is misplaced as it does not involve a defamation claim and all of the relevant conduct occurred within Kansas' borders.[36]

The Court will rely on Kansas case law indicating that in a defamation case, the court looks to the plaintiff's domicile as the place where the wrong was felt. Here, Kirsch's domicile is Virginia and Virginia law applies.[37]

*2. Defamation*

Under Virginia law, a defamation claim consists of: (1) the publication of; (2) a false and defamatory statement; (3) with the requisite intent.[38] With regard to the first element of publication,

---

[34]*Hermelink v. Dynamex Operations East, Inc.*, 109 F. Supp. 2d 1299, 1303-04 (D. Kan. 2000) (collecting cases).

[35]995 F. Supp. 1217 (D. Kan. 1998).

[36]Here, the alleged defamatory act occurred in Missouri. Dysvick sent an email from his computer in Missouri to Chief Ambrose, the Chief of Police in Grain Valley, Missouri after Kirsch went into Discount Liquor and Smokes in Grain Valley, Missouri.
    Nothing occurred in Kansas with the exception of the filing of a protective order on November 20, 2007, with the November 12, 2007 email attached to that document, in the District of Kansas' ECF filing system. For numerous reasons discussed below, this fails to qualify as either the place where the wrong was felt or the "last act necessary to complete the tort" if the Court were applying the KMPro parties' test.

[37]The KMPro parties assert a defamation claim on behalf of Kirsch, Hudson, and KMPro. With regard to Hudson and KMPro, Hudson is domiciled in Virginia while KMPro is domiciled in Maryland. Applying Kansas choice of law rules, the wrong would be felt in those domiciles and Virginia and Maryland law would apply. In Virginia, "[t]o prevail in a defamation cause of action, a plaintiff must establish that the alleged defamatory statements published were 'of or concerning' him." *Dean v. Dearing*, 561 S.E. 2d 686, 688 (Va. 2002). Similarly, in Maryland, the alleged statement must be of and concerning the plaintiff. *Freyd v. Whitfield*, 972 F. Supp. 940, 943 (D. Md. 1997)( citation omitted). Here, it is uncontroverted that this email only pertained to Kirsch and made no mention of Hudson or KMPro. As such, it was not of and concerning Hudson and KMPro; therefore, these two parties have no defamation claim. The Court will address the claim with respect to Kirsch.

[38]*Jackson v. Hartig*, 645 S.E.2d 303, 308 (Va. 2007).

a statement must be communicated to a third party.[39] "Publication occurs when an actionable statement is transmitted 'to some third person so as to be . . . understood by such person.'"[40]

The KMPro parties assert that defendants published the statements on the internet from Missouri and republished them in Kansas. They contend that hitting the "send" button on the computer four times with the intention of sending it constitutes publication and the filing of the document as an attached exhibit to Dysvick's motion for protective order constitutes publication in Kansas.

With regard to the email Dysvick intended to send to Chief Ambrose, it is undisputed that it was never received. Although the KMPro parties contend that Chief Ambrose's declaration merely states that he was not aware of receiving it in November of 2007, they have directed the Court to no evidence that he did receive it. Chief Ambrose's first declaration, procured by the KMPro parties' attorney Ms. Smiley, states that he had not seen the email before the day he provided the declaration and that he had not received it in his email. It appears that Ms. Smiley showed the email to Chief Ambrose on the day she obtained his affidavit. The KMPro parties have also not directed the Court to any evidence that the previous three emails were communicated to any third party so as to be understood by that third person. It is speculative that somebody else may have possibly received these emails.

With respect to the KMPro parties' assertion that defendants published the email to Chief Ambrose on June 15, 2009, this is without merit. On June 15, 2009, in connection with this motion

---

[39]*Katz v. Odin, Feldman & Pittleman, P.C.*, 332 F. Supp. 2d 909, 915 (E.D. Va. 2004) (citing *Thalhimer Bros v. Shaw*, 159 S.E. 87 (1931)).

[40]*Wynn v. Wachovia Bank, N.A.*, 2009 WL 1255464, at *3 (E.D. Va. 2009) (citing *Thalhimer Bros.*, 159 S.E. at 90)).

for summary judgment, Chief Ambrose provided an affidavit in which he states that he never saw the email prior to Ms. Smiley showing it to him sometime in November or December of 2007. Contrary to the KMPro party's assertions, there is nothing in this affidavit indicating that defendants showed the email or published the email to Chief Ambrose on this date. Regardless, the KMPro parties had previously published the email to Chief Ambrose almost two years prior when Ms. Smiley showed it to him to obtain his declaration.

With respect to the email being filed as an attachment with the protective order, there are several issues. First, the KMPro parties do not allege in their complaint that the filing of this email with the Court is the defamatory act. Instead, they allege that the defamation consists of Dysvick making a false report to the Grain Valley Chief of Police for the purpose of alleging Kirsch committed the crimes of stalking and trespass.

Second, although the KMPro parties contend that the email was communicated to agents of Cubic Defense Application, they have provided no evidence of this other than stating that Cubic's attorneys were automatically provided a copy by the Court's electronic filing system. The KMPro parties only reference the docket entries. They have not directed the Court to any evidence indicating that anyone at Cubic actually received the filing with the attached email. Furthermore, they have not directed the Court to any evidence that anybody at Cubic or any agent at Cubic was aware of or understood the content of the November 12, 2007 email. They simply have not produced evidence that Cubic was aware of this filing.

Finally, in Virginia and Kansas, it is well-established that an absolute privilege exists with respect to statements made in the context of judicial proceedings.[41]  Here, the email was attached to Triple-I's, Robert Spachman's, and Ronald Dysvick's motion for a protective order.  The email was provided as an exhibit to demonstrate the need for a protective order.  Although the KMPro parties contend that Dysvick composed the email but never sent it to Chief Ambrose for the purpose of filing a false motion for protective order, the Court finds that the KMPro parties have not provided the Court with any evidence as to this proposition and it is pure speculation.

Because there is no evidence that a publication occurred with respect to this email, the KMPro parties cannot meet the first element of their defamation claim. Accordingly, Dysvick and Knowledge Central are entitled to summary judgment as to this claim.

**IT IS ACCORDINGLY ORDERED** this 18th day of May, 2010 that Knowledge Central Corporation's and Dysvick's Motion for Summary Judgment (Doc. 59) is hereby granted.

**IT IS FURTHER ORDERED** that Knowledge Central Corporation's, Dysvick's, and Spachman's Motions for Summary Judgment (Doc. 66, 67, 68, and 69) are hereby denied.

**IT IS SO ORDERED**.

/s Eric F. Melgren
ERIC F. MELGREN
UNITED STATES DISTRICT JUDGE

---

[41]"It is settled law in Virginia that words spoken or written in a judicial proceeding that are relevant and pertinent to the matter under inquiry are absolutely privileged." *See Darnell v. Davis*, 58 S.E.2d 68, 70 (Va. 1950). Likewise, in Kansas, "[j]udicial proceedings are absolutely privileged communications, and statements in the course of litigation otherwise constituting an action for slander, libel, or one of the invasion of privacy torts involving publication, are immune from such actions. They are privileged communications because of the overriding public interest in a free and independent court system. This absolute privilege extends immunity to parties to private litigation and to anything published in relation to a matter at issue in court, whether said in pleadings, affidavits, depositions or open court." *Clear Water Truck Co., Inc. v. M. Bruenger & Co., Inc.*, 214 Kan. 139, 142-43, 519 P.2d 682, 686 (1974) (internal quotation and citations omitted).